IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

BRUCE LORICK,

                          Plaintiff,          Civil Action No.
                                              9:16-CV-1002 (BKS/DEP)

        v.

ANDREW CUOMO, *et al.*,

                          Defendants.
_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

BRUCE LORICK, *Pro Se*
81-A-2502
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          MARIA LISI-MURRAY, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Bruce Lorick, a New York State prison inmate, against the Governor of the State of New York and various other state officials, pursuant to 42 U.S.C. § 1983. In the claims that remain before the court, plaintiff alleges that he was denied due process and equal protection, as guaranteed under the Fourteenth Amendment, when he was denied parole release on multiple occasions.

The remaining defendants in the action have responded to plaintiff's amended complaint by requesting its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For the reasons set forth below, I recommend that defendants' motion to dismiss be granted and that plaintiff's remaining claims in the action be dismissed.

I.    <u>BACKGROUND</u>[2]

Plaintiff is a New York State prison inmate currently being held in the

---

[1]    The pending motion was initially submitted solely on behalf of defendant Annucci. Dkt. No. 27. At defendants' request, however, it has since been deemed to include defendants Cuomo and Stanford as moving parties. Dkt. Nos. 30, 31.

[2]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

custody of the New York State Department of Corrections and Community

Supervision ("DOCCS") as a result of a criminal conviction for second-

degree murder, stemming from the June 1980 shooting death of a New

York City transit police officer. Dkt. No. 15 at 8-9; Dkt. No. 15-1 at 3-4.

Plaintiff, who is currently incarcerated in the Clinton Correctional Facility

("Clinton"), located in Dannemora, New York, was housed in various

DOCCS facilities at the times relevant to his claims. Dkt. No. 15 at 2, 8,

12-13.

In New York, decisions regarding parole fall under the purview of the

Board of Parole ("Board"). *Graziano v. Pataki*, 689 F.3d 110, 113 (2d Cir.

2012) (per curiam); *see* N.Y. Exec. Law §§ 259, 259-b. The Board's

authority concerning parole release is governed by New York Executive

Law § 259-i which, in pertinent part, mandates that parole decisions be

informed by the following factors:

> (i) the institutional record including program goals
> and accomplishments, academic achievements,
> vocational education, training or work assignments,
> therapy and interactions with staff and inmates; (ii)
> performance, if any, as a participant in a temporary
> release program; (iii) release plans including
> community resources, employment, education and
> training and support services available to the
> inmate; (iv) any deportation order issued by the
> federal government against the inmate while in the
> custody of the department and any recommendation
> regarding deportation made by the commissioner of

the department pursuant to section one hundred forty-seven of the correction law; (v) any current or prior statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section 70.70 or section 70.71 of the penal law for a felony defined in article two hundred twenty or article two hundred twenty-one of the penal law; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the presentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest prior to confinement; and (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.

N.Y. Exec. Law. § 259-i(2)(c)(A).[3]  If the Board makes a determination to deny parole, within two weeks of the parole interview the inmate must be provided with a written statement disclosing the "factors and reasons for such denial of parole." *Id.* § 259-i(2)(a); 9 NYCRR § 8002.3.

Plaintiff first appeared before a three-member Board panel in April 2005, having served his minimum prison sentence of twenty-five years.

---

[3]    In 2011, the New York State Legislature amended section 259-i to mandate that the Board consider, among other things, the seriousness of the underlying crime and an inmate's prior criminal record. N.Y. Exec. Law § 259-i(2)(c)(A)(vii), (viii). In addition, the Board must now conduct an inmate risk analysis, colloquially known as a COMPAS report. N.Y. Correction Law § 112(4).

Dkt. No. 15 at 8. The panel denied plaintiff parole at that time, stating that "[d]uring [his] parole hearing, [plaintiff] made a concerted effort to minimize [his] culpability" and had been cited for assault, drug possession, drug use, and fighting during his incarceration. Dkt. 15-1 at 22. The panel concluded that plaintiff "demonstrated a total disregard for authority and for the sanctity of human life[, and that his] release to parole is inappropriate at this time as it would deprecate the severity of [his] most brutal offense and serve to undermine respect for the law." *Id.*

Plaintiff next appeared before a Board panel in April 2007, and again in February 2009, February 2011, February 2013,[4] February 2015 and March 2015, each time receiving a written denial of parole from the Board.[5] Dkt. No. 15 at 10-16. On each of those occasions, the respective Board panel cited various reasons for its decision, including the nature and severity of plaintiff's crime, plaintiff's infractions while incarcerated,

---

[4]     Plaintiff challenged the Board's February 2013 parole determination by way of an Article 78 proceeding. On December 14, 2014, Albany County Supreme Court Justice Henry F. Zwack vacated plaintiff's February 2013 parole determination and directed that plaintiff be provided with a new hearing. *See* Dkt. No. 15-3 at 8-13. In his decision, Justice Zwack concluded that it was not apparent that the panel had considered all of the factors required under state law to be examined when making a parole determination. *Id.*

[5]     Minutes from those parole hearings are included as exhibits to plaintiff's amended complaint. *See* Dkt. Nos. 15-1 at 2 through 15-2 at 83.

community opposition to his release, plaintiff's unwillingness to accept responsibility for his crime, and plaintiff's demonstrated lack of impulse control and self-discipline. *Id.*

Plaintiff's most recent parole hearing was on March 17, 2015. Dkt. No. 15-2 at 67-83. In denying plaintiff's request for parole on that occasion, the panel noted that plaintiff "continue[s] to blame the victim" of his crime and "continue[s] to use drugs while incarcerated." *Id.* at 81. It went on to state the members' belief that plaintiff's "limited insight into [his] criminal conduct . . . and shallow expressions of remorse" demonstrated that plaintiff posed a risk to public safety. *Id.* The panel addressed its consideration of various relevant factors, including "attempts at rehabilitation, [plaintiff's] risk to the community, needs for successful reintegration, current and past letters of reasonable assurance, parole packet submitted by the Legal Aid Society, [plaintiff's] parole plans and significant opposition to [his] release." *Id.*

On February 7, 2016, plaintiff sent a letter to defendant Andrew Cuomo, the Governor of the State of New York, complaining that the Board failed to comply with New York Executive Law §§ 259-i and 259-c in rendering its determinations concerning his parole requests. Dkt. No. 15 at 16; *see* Dkt. No. 15-3 at 1. Plaintiff also wrote to defendant Tina Stanford,

the Chair of the Board of Parole, on February 12, 2016, accusing the

parole hearing officers of violating New York Executive Law § 259-i.[6] Dkt.

No. 15 at 1; Dkt. No. 15-3 at 2-4. Defendant Stanford did not respond to

plaintiff's letter. Dkt. No. 15 at 17. Plaintiff alleges that upon receipt of his

letter, Governor Cuomo directed defendant Anthony Annucci, who is the

Acting Commissioner of the DOCCS, to investigate the matter. *Id.* Plaintiff

subsequently received a letter dated March 14, 2016, from Jeff McKoy,

Deputy Commissioner for Program Services, informing plaintiff that the

DOCCS and the Board are independent bodies, and the DOCCS thus

exercises no control over Board decisions. Dkt. No. 15-3 at 6.

Plaintiff's amended complaint alleges that the Board's "policy for

determining if an inmate is eligible for parole release, which ostensibly is a

neutral policy, has been implemented in a discriminatory manner that

intentionally and in bad faith dis-proportionally [sic] discriminates against

African-American inmates[.]" Dkt. No. 15 at 20. Plaintiff further claims that

Caucasian inmates similarly situated to him have been granted parole and

identifies five specific Caucasian inmates who were granted parole

release, but charged with similar or more severe crimes than the plaintiff.

---

[6]      Neither plaintiff's letter to Governor Cuomo nor his subsequent letter to
defendant Stanford made reference to his present claim that the parole denials were
based upon his race. Dkt. No. 15-3 at 1.

*Id.* at 20-24. In support of his allegations, plaintiff also relies upon a newspaper article published in the *Albany Times Union* on December 6, 2016, which, according to plaintiff, "reported on the disparity between African-American inmate[s] and Caucasian inmates." *Id.* at 25; *see* Matthew Hamilton, *Governor Orders Probe of Prisons*, ALBANY TIMES UNION, Dec. 6, 2016, *available at* 2016 WLNR 37373993. That news article purports to cite evidence "show[ing] [that] black inmates were denied parole at higher rates than white inmates."[7] Dkt. No. 15-3 at 17. Based upon these allegations of racial discrimination, plaintiff asserts that defendants violated his due process and equal protection rights under the Fourteenth Amendment by denying him parole between 2007 and 2015. Dkt. No. 15 at 24-25.

II.   PROCEDURAL HISTORY

   Plaintiff commenced this action on or about August 12, 2016. Dkt. No. 1. Following her initial review of plaintiff's complaint and

---

[7]   The newspaper article cited by plaintiff constitutes hearsay, and would not likely be considered on a motion for summary judgment or at trial as having evidentiary value. *See* Fed. R. Evid. 801(c); *Outerbridge v. City of N.Y.*, No. 13 Civ. 5459 (AT)(DCF), 2015 WL 5813387, at *4 (S.D.N.Y. Sept. 30, 2015) ("It is well-established that newspaper articles offered for the truth of the matters asserted therein are inadmissible hearsay that may not be considered by the Court in deciding a motion for summary judgment." (quotation marks omitted)); *see Nora Bevs., Inc. v. Perrier Group of Am. Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial.").

accompanying motion for leave to proceed in the matter *in forma pauperis* ("IFP"), pursuant to 28 U.S.C. §§1915(e), 1915A, District Judge Brenda K. Sannes issued a decision and order granting plaintiff's IFP application, and dismissing his complaint for failure to state a cognizable claim, with leave to replead. Dkt. No. 14. On February 24, 2017, plaintiff availed himself of the opportunity to amend, Dkt. No. 15, and Judge Sannes thereafter accepted his revised pleading for filing only to the extent the amended complaint asserted due process and equal protection causes of action against defendants Cuomo, Stanford, and Annucci. Dkt. No. 16.

On August 8, 2017, defendant Annucci responded to plaintiff's amended complaint by filing the currently pending motion to dismiss plaintiff's remaining claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 27. In his motion, defendant Annucci argues both that plaintiff has not alleged sufficient facts to demonstrate that he was personally involved in the conduct giving rise to the claimed constitutional violations, and additionally that plaintiff's amended complaint does not state facts demonstrating the existence of a plausible due process or equal protection claim. *Id.*

Following service of process upon defendants Cuomo and Stanford, defendants' counsel submitted a letter to the court requesting that

defendant Annucci's motion to dismiss be considered on behalf of

defendants Cuomo and Stanford in the interest of judicial economy.[8]  Dkt.

No. 30 at 1. The court granted that request, Dkt. No. 31, and plaintiff

thereafter filed his response in opposition to defendants' motion. Dkt. No.

35.

Defendants' motion, which is now fully briefed and ripe for

determination, has been referred to me for the issuance of a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Legal Standard Governing Motions to Dismiss

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading using a standard which, though

unexacting, "demands more than an unadorned, the-defendant-unlawfully-

harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,

555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a

---

[8]    The letter from counsel making that request did not state whether defendants
Cuomo and Stanford were joining in the portion of the motion addressing personal
involvement, the merits, or both.

pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require

heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.   Personal Involvement

In their motion, defendants seek dismissal of plaintiff's claims against them on the basis that plaintiff has failed to plead facts plausibly demonstrating that they were personally involved in the parole denials

giving rise to plaintiff's claims. Dkt. No. 27-1 at 4-5; Dkt. No. 31.

       1.   Legal Standard

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has observed, a defendant may only be held accountable for his actions under section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). As a result, in order to prevail on a section 1983 cause of action against an individual, a plaintiff must show a "tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under the law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).[9]

None of the three remaining defendants was directly involved in any

---

[9]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

of the challenged decisions to deny plaintiff release on parole. They are named by plaintiff because of their supervisory positions as Governor, DOCCS Commissioner, and the Chair of the Parole Board. It is well established that a supervisor cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995);[10] *Wright*,

---

[10]    Subsequent to issuance of the Second Circuit's decision in *Colon*, the Supreme Court addressed the question of supervisory liability in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although the issue has been discussed in several relatively recent decisions, the Second Circuit has yet to squarely address the impact of Iqbal upon the categories of supervisory liability addressed in *Colon. See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) ("We express no view on the extent to which . . . [*Iqbal*] may

21 F.3d at 501.

## 2.    Defendants Cuomo and Annucci

Plaintiff alleges that on February 7, 2016, he wrote a letter to defendant Cuomo complaining that the Board failed to comply with the statutory provisions regulating parole decisions. Dkt. No. 15 at 16; *see* Dkt. No. 15-3 at 1. Plaintiff states his belief that upon receipt of that letter, defendant Cuomo directed defendant Annucci to "look into the plaintiff's letter of complaint." Dkt. No. 15 at 17. Notably, plaintiff does not allege that he sent any correspondence regarding the Board's alleged wrongdoing directly to defendant Annucci. Instead, he claims that Cuomo's instruction to Annucci then led to Jeff McKoy's involvement, who responded by informing plaintiff that because the DOCCS and the Parole Board are separate and independent entities, the DOCCS lacks jurisdiction over decisions of the Board. Dkt. No. 15-3 at 6.

---

have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citation and quotation marks omitted)); s*ee also Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the Supreme Court's decision in [*Iqbal*] . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case, for [the plaintiff] did not adequately plead the [defendant]'s personal involvement even under *Colon*."); *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit without the continuing vitality of the supervisory liability test set forth in [*Colon*,] . . . . but the fate of *Colon* is not properly before us[.]").

Accepting plaintiff's allegations as true for purposes of the pending motion, plaintiff does not allege that defendants Cuomo or Annucci participated directly in the violations alleged, created a custom or policy to foster the violation, or were grossly negligent in supervising subordinates who caused the violation. Instead, defendant alleges that defendants Cuomo and Annucci failed to remedy the violation after learning of it through plaintiff's letter. It is recognized that "where a commissioner's involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the commissioner has insufficient personal involvement to sustain a [section] 1983 cause of action." *Garvin v. Goord*, 212 F. Supp. 2d 123, 126 (W.D.N.Y. 2002) (citing *Edmonson v. Coughlin*, 21 F. Supp. 2d 242, 255 (W.D.N.Y. 1998)). I note, moreover, that plaintiff's letter to defendant Cuomo does not provide any statement regarding his concerns of racial discrimination by the Board, indicating only that the Board was not "abiding by sections "259i and 259c." Dkt. No. 15-3 at 1. Thus, taking plaintiff's statements as true for purposes of this motion, defendants Cuomo and Annucci's actions of forwarding plaintiff's correspondence, which lacked any reference to racial discrimination, to subordinates cannot rise to a sufficient level of personal involvement under section 1983. It is therefore recommended that as to defendants

Cuomo and Annucci, defendants' motion to dismiss be granted.[11]

### 3.   Defendant Stanford

Plaintiff alleges that on February 12, 2016, he sent a letter to defendant Stanford regarding the Board's failure to comply with the relevant statutory provisions in determining parole eligibility. Dkt. No. 15 at 16. As was that case with respect to the Cuomo letter, this letter contained no allegations of racial discrimination by the Board. Dkt. No. 15-3 at 2-4. According to plaintiff, he received no response to his letter. Dkt. No. 15 at 17. Absent any other allegations aside from this letter regarding defendant Stanford's actions, plaintiff has not pleaded facts sufficient to show her personal involvement in the offending conduct sufficiently to establish liability under section 1983. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (holding the defendant was not personally involved in the deprivation of the plaintiff's constitutional rights where the plaintiff sent two

---

[11]   It should be noted, moreover, that under the parole regime in effect at the relevant times in New York defendant Annucci, as DOCCS Commissioner, did not oversee parole decisions. Plaintiff was apprised of this fact by Deputy DOCCS Commissioner McKoy in his March 14, 2016 letter, who indicated that while the Division of Parole and the DOCCS have merged, the Board remains a separate and independent entity and the DOCCS had no jurisdiction over Board decisions. Dkt. No. 15-5 at 6; *see* Executive Law § 259-b ("The [B]oard shall function independently of the department regarding all of its decision-making functions . . . ."); *see also* 2011 N.Y. Sess. Laws 590 ("[T]he [B]oard shall continue to exercise its independence when making [parole] decisions."). Accordingly, it does not appear that defendant Annucci was in a position to remedy any constitutional violation associated with the Board's decisions, even assuming he had notice of the violation.

letters to the defendant regarding the violation; one letter was forwarded

on to the appropriate person, and the second was responded to by the

defendant); *see Grullon*, 720 F.3d at 139. It is therefore recommended that

defendants' motion to dismiss as it relates to defendant Stanford also be

granted.

C.    Leave to Amend the Complaint

Ordinarily, a court should not dismiss a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal

reading of the complaint gives any indication that a valid claim might be

stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see* Fed. R.

Civ. P. 15(a) ("The court should freely give leave when justice so

requires."); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp.

986, 1003 (E.D.N.Y. 1995) (permitting leave to replead where court could

"not determine that the plaintiffs would not, under any circumstances, be

able to allege a civil RICO conspiracy").

Plaintiff originally commenced this lawsuit against thirteen

Commissioners of the Board of Parole who were involved with his parole

hearings during the period from 2005 to 2015, along with defendants

Cuomo, Annucci, and Stanford. *See generally* Dkt. No. 1. After a routine,

initial review of that complaint, however, Judge Sannes dismissed

plaintiff's claims against the thirteen Commissioners based upon the immunity which they enjoy by virtue of their quasi-judicial functions, and the remaining claims against defendants Cuomo, Annucci, and Stanford because "plaintiff has failed to allege facts which plausibly suggest that these defendants were personally involved in the determinations by the Board of Parole complained of." Dkt. No. 14 at 13. Plaintiff was afforded an opportunity to file an amended complaint, but was cautioned that his amended complaint "must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue." Dkt. No. 14 at 13. Plaintiff's allegations in his amended complaint regarding the involvement of defendants Cuomo, Annucci, and Stanford, however, remained largely unchanged from his original complaint. *Compare* Dkt. No. 1 at 11-12, *with* Dkt. No. 15 at 16-17.[12]

In short, plaintiff was pointedly advised by District Judge Sannes of the need to establish a basis to hold the remaining three defendants accountable for the actions of the various Board panels and was afforded

---

[12]    Although plaintiff's claims against the thirteen Commissioners of the Board were dismissed by Judge Sannes with prejudice and plaintiff was warned that those claims could not be reasserted in an amended complaint, plaintiff nonetheless persisted in naming those thirteen Commissioners of the Board his amended complaint. *See generally* Dkt. No. 15. In her subsequent decision, Judge Sannes observed that the thirteen Commissioners are not properly named and are not defendants to this action. Dkt. No. 16 at 4.

an opportunity to amend his complaint in order to plead facts to show their personal involvement in the offending conduct. Having failed to succeed in establishing grounds to hold the three remaining defendants liable, I recommend that plaintiff not be granted another opportunity to amend.

## V.    SUMMARY AND RECOMMENDATION

Plaintiff's amended complaint centers upon allegations that determinations made by various panels of the Board with respect to his parole release were the result of a disproportionate impact of Board decisions on African-Americans and violated his due process and equal protection rights. When all inferences are drawn in favor of plaintiff at this early procedural juncture, I nonetheless find that plaintiff has failed to allege sufficient facts plausibly suggesting the three remaining defendants were personally involved in the alleged violation.

Based on the foregoing, it is hereby respectfully

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 27) plaintiff's amended complaint (Dkt. No. 15) be GRANTED and that his amended complaint be DISMISSED, without leave to replead.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this

report.[13]   FAILURE TO SO OBJECT TO THIS REPORT WILL

PRECLUDE APPELLATE REVIEW.   28 U.S.C. § 636(b)(1); Fed. R. Civ.

P.   6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    January 19, 2018
          Syracuse, New York

---

[13]    If you are proceeding *pro se* and are served with this report and
recommendation by mail, three additional days will be added to the fourteen-day
period, meaning that you have seventeen days from the date the report and
recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If
the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then
the deadline is extended until the end of the next day that is not a Saturday, Sunday, or
legal holiday. Fed. R. Civ. P. 6(a)(1)(C).