IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRUCE LORICK,

                         Plaintiff,          Civil Action No.
                                             9:16-CV-1002 (BKS/DEP)

       v.

TINA M. STANFORD,

                         Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

BRUCE LORICK, *Pro Se*
81-A-2502
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

FOR DEFENDANT:

HON. LETITIA JAMES                    ADRIENNE J. KERWIN, ESQ.
New York State Attorney General       Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Bruce Lorick, a New York State prison inmate, pursuant to 42 U.S.C. § 1983. Plaintiff alleges that following his conviction and a lengthy period of incarceration, he was denied parole on numerous occasions based upon his race, in violation of his rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

The single remaining defendant in the action has responded to an amended complaint filed by the plaintiff by seeking its dismissal for failure to state a claim upon which relief may be granted. For the reasons set forth below, I recommend that defendant's motion be denied.

I.    <u>BACKGROUND</u>[1]

Plaintiff is a New York State prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") as a result of his conviction for second-degree murder, stemming from the June 1980 shooting death of a New York City

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

transit police officer. Dkt. No. 15 at 8-9; Dkt. No. 15-1 at 3-4. Plaintiff, who is currently incarcerated in the Shawangunk Correctional Facility, located in Wallkill, New York, has been housed at several different DOCCS facilities at the times relevant to his claims. Dkt. No. 15 at 2, 8, 12-13.

In New York, decisions regarding parole release fall under the purview of the Board of Parole ("Board"). *Graziano v. Pataki*, 689 F.3d 110, 113 (2d Cir. 2012) (per curiam) (citing N.Y. Exec. Law §§ 259, 259-b). The Board's authority concerning parole release is governed by New York Executive Law § 259-I, which, in pertinent part, mandates that parole decisions be informed by the following eight factors:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate; (iv) any deportation order issued by the federal government against the inmate while in the custody of the department and any recommendation regarding deportation made by the commissioner of the department pursuant to section one hundred forty-seven of the correction law; (v) any current or prior statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated; (vi) the length of the determinate sentence to which the inmate would be subject had he or she received a sentence pursuant to section

> 70.70 or section 70.71 of the penal law for a felony
> defined in article two hundred twenty or article two
> hundred twenty-one of the penal law; (vii) the
> seriousness of the offense with due consideration to
> the type of sentence, length of sentence and
> recommendations of the sentencing court, the
> district attorney, the attorney for the inmate, the
> presentence probation report as well as
> consideration of any mitigating and aggravating
> factors, and activities following arrest prior to
> confinement; and (viii) prior criminal record,
> including the nature and pattern of offenses,
> adjustment to any previous probation or parole
> supervision and institutional confinement.

N.Y. Exec. Law. § 259-i(2)(c)(A).[2] If parole release is denied by the Board,

the inmate must be provided with a written statement disclosing the

"factors and reasons for such denial of parole. . . . in detail and not in

conclusory terms" within two weeks of the parole interview. *Id.* § 259-

i(2)(a); 9 N.Y.C.R.R. § 8002.3.

Plaintiff first appeared before a three-member Board panel in April

2005, having served his minimum prison sentence of twenty-five years.

Dkt. No. 15 at 8. The panel denied plaintiff parole release at that time,

stating that "[d]uring [his] parole hearing, [plaintiff] made a concerted effort

to minimize [his] culpability" and had been cited for assault, drug

---

[2]    In 2011, the New York State Legislature amended section 259-i of the Executive
Law to mandate that the Board consider, among other things, the seriousness of the
underlying crime and an inmate's prior criminal record. N.Y. Exec. Law § 259-
i(2)(c)(A)(vii), (viii). In addition, the Board must now conduct an inmate risk analysis,
which is colloquially known as a COMPAS report. N.Y. Correction Law § 112(4).

possession, drug use, and fighting during his incarceration. Dkt. No. 15-1 at 22. The panel concluded that plaintiff "demonstrated a total disregard for authority and for the sanctity of human life[, and that his] release to parole [was] inappropriate at [that] time as it would deprecate the severity of [his] most brutal offense and serve to undermine respect for the law." *Id.*

Plaintiff next appeared before a Board panel in April 2007, and again in February 2009, February 2011, February 2013,[3] February 2015 and March 2015, each time receiving a written denial of parole from the Board.[4] Dkt. No. 15 at 10-16. On each of those occasions, the respective Board panel cited numerous reasons for the decision to deny parole release, including the nature and severity of plaintiff's crime, plaintiff's infractions while incarcerated, community opposition to his release, plaintiff's unwillingness to accept responsibility for his crime, and plaintiff's demonstrated lack of impulse control and self-discipline. *Id*.

According to his amended complaint, which is dated February 16,

---

[3]    Plaintiff challenged the February 2013 parole determination by way of an Article 78 proceeding. On December 14, 2014, Albany County Supreme Court Justice Henry F. Zwack vacated that parole determination and directed that plaintiff be provided with a new hearing. *See* Dkt. No. 15-3 at 8-13. In his decision, Justice Zwack concluded that it was not apparent that the panel had considered all of the factors required under state law to be examined when making a parole determination. *Id*.

[4]    Minutes from those parole hearings are included as exhibits to plaintiff's amended complaint. *See* Dkt. Nos. 15-1 at 2 through 15-2 at 83.

2017, plaintiff's most recent parole hearing was on March 17, 2015.[5] Dkt. No. 15-2 at 67-83. In denying plaintiff's request for parole on that occasion, the panel noted that plaintiff "continue[s] to blame the victim" of his crime and "continue[s] to use drugs while incarcerated." *Id.* at 81. It went on to state the Board panel's belief that plaintiff's "limited insight into [his] criminal conduct . . . and shallow expressions of remorse" demonstrated that plaintiff posed a risk to public safety. *Id.* The panel addressed its consideration of various relevant factors, including "attempts at rehabilitation, [plaintiff's] risk to the community, needs for successful reintegration, current and past letters of reasonable assurance, parole packet submitted by the Legal Aid Society, [plaintiff's] parole plans and significant opposition to [his] release." *Id.*

On February 7, 2016, plaintiff sent a letter to Andrew Cuomo, the Governor of the State of New York, complaining that the Board failed to comply with New York Executive Law §§ 259-i and 259-c in rendering its

---

[5]    The pattern that emerges from plaintiff's amended complaint suggests that he is afforded parole hearings every two years and that, consequently, one would have been held in or about February 2017, and another at sometime this month. According to publicly available information from the Division of Parole, plaintiff did in fact appear at a parole hearing in February 2017, and was again denied parole at that time. That information also reveals that another parole hearing for the plaintiff is scheduled for the month of February of 2019. *See* http://nysdoccslookup.doccs.ny.gov (last visited Feb. 27, 2019) (DIN# 81A2502).

determinations concerning his request for parole release. Dkt. No. 15 at 16; *see* Dkt. No. 15-3 at 1. Plaintiff also wrote to defendant Tina Stanford, the Chair of the Board of Parole, on February 12, 2016, accusing the parole hearing officers of violating New York Executive Law § 259-i.[6] Dkt. No. 15 at 1; Dkt. No. 15-3 at 2-4. Defendant Stanford did not respond to plaintiff's letter. Dkt. No. 15 at 17. Plaintiff alleges that upon receipt of his letter, Governor Cuomo directed Anthony Annucci, who is the Acting Commissioner of the DOCCS, to investigate the matter. *Id.* Plaintiff subsequently received a letter, dated March 14, 2016, from Jeff McKoy, Deputy Commissioner for Program Services, informing plaintiff that the DOCCS and the Board are independent bodies, and the DOCCS thus exercises no control over Board decisions. Dkt. No. 15-3 at 6.

Plaintiff's amended complaint alleges that the Board's "policy for determining if an inmate is eligible for parole release, which ostensibly is a neutral policy, has been implemented in a discriminatory manner that intentionally and in bad faith dis-proportionally [sic] discriminates against African-American inmates[.]" Dkt. No. 15 at 20. Plaintiff further claims that

---

[6]     Neither plaintiff's letter to Governor Cuomo nor his subsequent letter to defendant Stanford made reference to his present claim that the parole denials were based upon his race. Dkt. No. 15-3 at 1.

Caucasian inmates similarly situated to him have been granted parole and identifies five specific Caucasian inmates who were granted parole release, but charged with similar or more severe crimes than the plaintiff. *Id.* at 20-24. In support of his allegations, plaintiff also relies upon a newspaper article published in the *Albany Times Union* on December 6, 2016, which, according to plaintiff, "reported on the disparity between African-American inmate[s] and Caucasian inmates." *Id.* at 25; *see* Matthew Hamilton, *Governor Orders Probe of Prisons*, ALBANY TIMES UNION, Dec. 6, 2016, *available at* 2016 WLNR 37373993. That news article purports to cite evidence "show[ing] [that] black inmates were denied parole at higher rates than white inmates."[7] Dkt. No. 15-3 at 17. Based upon these allegations of racial discrimination, plaintiff asserts that defendant violated his rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution by denying him parole between 2007 and 2015. Dkt. No. 15 at 24-25.

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on or about August 12, 2016. Dkt.

---

[7]    The newspaper article cited by plaintiff constitutes hearsay and would likely not be considered on a motion for summary judgment or at trial as having evidentiary value. *See* Fed. R. Evid. 801(c); *see also Nora Bevs., Inc. v. Perrier Grp. of Am. Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial.").

No. 1. Following her initial review of plaintiff's complaint and accompanying motion for leave to proceed in the matter *in forma pauperis* ("IFP"), pursuant to 28 U.S.C. §§1915(e), 1915A, District Judge Brenda K. Sannes issued a decision and order on January 23, 2017, granting plaintiff's IFP application and dismissing his complaint for failure to state a cognizable claim, with leave to replead. Dkt. No. 14. On February 24, 2017, plaintiff availed himself of the opportunity to amend, Dkt. No. 15, and Judge Sannes thereafter accepted his revised pleading for filing only to the extent that Governor Cuomo, Acting Commissioner Annucci, and Division of Parole Chair Stanford violated his rights protected by the Due Process Clause and Equal Protection Clause. Dkt. No. 16.

The three remaining defendants challenged plaintiff's amended complaint seeking its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[8] As a result of that motion, and following my issuance of a report and recommendation, District Judge Sannes issued a text order in which she identified as a potential issue the question of whether plaintiff's claims in this action are barred by *Heck v. Humphrey*,

---

[8]    The original dismissal motion was made only on behalf of Acting Commissioner Annucci. Dkt. No. 27. Following service upon Governor Cuomo and defendant Stanford, however, counsel wrote to the court and asked that Acting Commissioner Annucci's motion be considered on behalf of all three parties in the interest of judicial economy. Dkt. No. 30.

512 U.S. 477 (1994) and its progeny, and afforded the parties time to brief the issue. Dkt. Nos. 38, 39, 40. On March 27, 2018, Judge Sannes issued a memorandum-decision and order dismissing plaintiff's claims with prejudice against Acting Commissioner Annucci and Governor Cuomo, and plaintiff's damage claims against defendant Stanford, but otherwise denying defendants' motion. Dkt. No. 41. She declined to rule on the merits of the *Heck* issue, however, "[g]iven this fundamental question regarding the nature of the [p]laintiff's claim for relief, and the absence of briefing on the applicability of *Heck* to that claim."[9] Dkt. No. 41 at 5-6.

On April 26, 2018, defendant Stanford again moved for dismissal of plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 42. In her motion, defendant does not address the *Heck* issue, noting that "plaintiff clarified that the only injunctive relief that he is seeking from defendant Stanford is a de novo parole hearing." Dkt. No. 42-1 at 4.

Despite Judge Sannes's prior conclusion that plaintiff had plausibly alleged that "the Board of Parole determinations violated his rights

---

[9]     In the additional briefing provided by the parties, defendants asserted that plaintiff's claims are barred by *Heck* "since it does not appear that plaintiff is seeking prospective injunctive relief." Dkt. No. 39. In response, plaintiff asserted that his claims were not barred by *Heck* because he is seeking a de novo parole hearing. Dkt. No. 40 at 5.

protected by the Due Process Clause and Equal Protection Clause," *see* Dkt. No. 16 at 5, defendant Stanford argues that "[t]he only claim contained in the amended complaint is one alleging that plaintiff's equal protection rights are being violated based on his race." Dkt. No. 42-1 at 4. As a result, defendant's motion does not address any claims arising under the Due Process Clause. *See generally id.*

Instead, defendant Stanford argues that plaintiff's complaint fails to allege facts demonstrating the existence of a plausible claim of intentional discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[10]  *See generally* Dkt. No. 42-1. She contends that plaintiff's claim essentially asserts a theory of disparate impact, arguing that while the state's parole regime is facially neutral, it is being applied in a racially discriminatory manner, and that such a cause of action is not cognizable under the Equal Protection Clause. *Id.*

---

[10]     Because in his amended complaint plaintiff does not include a prayer for relief, and in his first paragraph he proclaims that he is seeking declaratory relief pursuant to 28 U.S.C. §§ 2283 and 2284, as well as under Rule 65 of the Federal Rules of Civil Procedure, which governs applications for injunctive relief, it is unclear from the four corners of the complaint precisely what form of non-monetary relief plaintiff is seeking. *See* Dkt. No. 15 at 1, 15. From plaintiff's submissions, however, the court has ascertained that the injunctive relief sought by Lorick is limited to requiring that he be afforded a new parole hearing. *See, e.g.*, Dkt. No. 41 at 5; Dkt. No. 44 at 1; Dkt. No. 45 at 3. Accordingly, his claims in this case do not appear to be precluded under *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny.

Plaintiff has submitted two filings in response to defendant's motion, both of which are primarily addressed to the *Heck* issue. Dkt. Nos. 44, 45. Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.     DISCUSSION

  A.     Dismissal Motion Standard of Review

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop,

particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Analysis

Defendant argues that a disparate impact theory, born of claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, does not apply to claims arising under the Equal Protection Clause, even if application of the state's facially neutral parole guidelines are applied in a manner resulting in a disproportionate burden on a protected class. Dkt. No. 42-1 at 5-6 (citing *Crawford v. Marion Co. Election Bd.,* 553 U.S. 181, 207 (2008)).[11]

---

[11]    The Second Circuit has described this theory as follows:

In his amended complaint, plaintiff has alleged that members of the Board who have denied his parole applications over the years have intentionally discriminated against him on the basis of his race. If plaintiff is able to prove such invidious discriminatory intent on the part of all of those various Board members who have participated in the decision-making process over the years, he would succeed in demonstrating a violation of his rights arising under the Equal Protection Clause of the Fourteenth Amendment. *See Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).

Defendant argues plaintiff has not alleged sufficient facts to plausibly suggest that this is true. Dkt. No. 42-1 at 6. As is reflected above, however, in support of his allegations, plaintiff claims that Caucasian inmates similarly situated to him have been granted parole, while he has been consistently denied release on parole, plaintiff cites five specific

_____

> Disparate impact claims "are concerned with whether employment policies or practices that are in neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group."

*Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (citing and quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001)). "[E]qual Protection claims brought under [section] 1983 cannot be based solely on the disparate impact of a facially neutral policy." *Reynolds*, 685 F.3d at 201. Instead, to prevail on an Equal Protection claim under section 1983 a plaintiff must prove intentional discrimination. *Id*.

examples of inmates charged with similar or more severe crimes than the plaintiff that were released on parole. Dkt. No. 15 at 20-24. Plaintiff also cites a newspaper article published on December 6, 2016 in the *Albany Times Union* claiming that statistics demonstrate a disparity in the granting of parole between African American inmates and those who are Caucasian. *Id*. at 25; *see also* Dkt. No. 15-3 at 17. These allegations were reviewed by District Judge Sannes pursuant to 28 U.S.C. §§ 1915(e), 1915A, and were implicitly found, when construed with the lenity owing to plaintiff as a *pro se* litigant, to be sufficient to support a cause of acting arising under both the Due Process Clause and Equal Protection Clause.[12] Dkt. No. 16 at 4-5.

As unlikely as it may seem that each of the various Parole Board members that have consistently decided to deny plaintiff's requests for parole over the years were all motivated to do so by his race, the court is unable to say at this early procedural juncture that plaintiff has not demonstrated a plausible claim of intentional discrimination on the basis of race. Accordingly, defendant's dismissal motion is lacking in merit.

III.   SUMMARY AND RECOMMENDATION

---

[12]     In her decision Judge Sannes did, however, make the following observation: "This is not a ruling on the merits and the Court expresses no opinion as to whether plaintiff's claims can survive a properly filed dispositive motion." Dkt. No. 16 at 5.

While skeptical that plaintiff will ultimately be able to prove that each of the denials of his requests for parole was the product of invidious racial discrimination, I am unable to conclude that plaintiff has not stated a plausible claim of intentional discrimination in violation of the Equal Protection clause of the Fourteenth Amendment. Accordingly, it is hereby respectfully

RECOMMENDED, that defendant's motion to dismiss (Dkt. No. 42) be DENIED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[13] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

---

[13]     If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      February 27, 2019
            Syracuse, New York